ORIGINAL
PdF
C/M

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
1 800 PLAN, LLC,

                      Plaintiff,          **MEMORANDUM & ORDER**
-against-                                 Case No. 07-CV-740 (FB) (RLM)

EASTERN SAVINGS BANK, F.S.B.,

                      Defendant.
------------------------------------------------------x

*Appearances:*
*For the Plaintiff:*                                 *For the Defendant*:
MARIO DEROSSI, ESQ.                   ALAN T. GALLANTY, ESQ.
Stern, Adler & Associates, LLP           Twomey, Hoppe & Gallanty LLP
1025 Old Country Road                    757 Third Avenue
Westbury, New York 11590               New York, New York 10017

**BLOCK, Senior District Judge:**

       Before the Court is Eastern Savings Bank's ("ESB") Fed. R. Civ. P. 12(b)(6) motion to dismiss plaintiff's complaint, which alleges that ESB breached a "written commitment" to loan plaintiff $3,275,000. For reasons stated below, ESB's motion is granted.

### I

       In considering a motion to dismiss for failure to state a claim upon which relief can be granted, the Court accepts as true the plaintiff's factual allegations and draws all reasonable inferences in favor of the non-moving party. *See Board of Educ. of Pawling Central School Dist. v. Schutz*, 290 F.3d 476, 479 (2d Cir. 2002). Plaintiff's complaint alleges the following:

       Plaintiff is a real estate entity primarily in the business of developing multi-unit residential homes. In 2005, plaintiff contracted to purchase property on Bergen Street

in Brooklyn, New York and in January of 2006 applied to ESB for acquisition and construction loans in the total amount of $3,275,000. On January 19, 2006, ESB sent to plaintiff a document termed "Application Agreement," which required plaintiff to sign and return the document and provide an application deposit of $16,375, equivalent to 0.5% of the requested loan amount; plaintiff satisfied both conditions within one week. "As a result, [p]laintiff received the [d]efendant's written commitment dated January 27, 2006 wherein [d]efendant committed to loan to [p]laintiff the amount of $3,275,000.00." Compl. ¶ 10.

The "written commitment" covered five loans: (1) an acquisition loan of $975,000 for the Bergen Street property; (2) a construction loan of $1,550,000 for the Bergen Street property; (3) a refinance loan of $230,000 for a property owned by plaintiff on Greene Avenue in Brooklyn; (4) a construction loan of $245,000 for the Green Avenue property; and (5) an interest reserve and expenses loan of $275,000.

On February 14 2006, ESB closed the acquisition loan for the Bergen Street property; at that time, ESB "stat[ed] to [p]laintiff that it preferred to close the [Bergen Street] construction loan and Green Avenue loans at a later date." *Id.* ¶ 13. The Greene Avenue loans, totaling $475,000, were closed on May 4, 2006; however, on June 15, 2006, ESB mailed plaintiff a notice informing plaintiff that the Bergen Street construction loan "[a]pplication [was] [d]enied" because plaintiff had "[i]nsufficent [f]unds to [c]lose the [l]oan," resulting in ESB being unable to "[g]rant [c]redit on [t]erms [r]equested" by

plaintiff. Compl., Ex. G (Statement of Credit Denial).[1] Plaintiff claims that ESB breached the "written commitment" by refusing to close the $1.55 million loan; as a result, plaintiff allegedly incurred damages in excess of $17 million because it (1) had to arrange for substitute funding at less-favorable terms, and (2) lost the opportunity to purchase and develop another property as a result of using its cash resources to pay for construction of the Bergen Street property.[2] *See* Compl. ¶16.

While plaintiff alleges that the "written commitment" bound ESB to close all of the loans contemplated by the document, the document was not attached to the complaint; nonetheless, in addition to the documents which were appended to the complaint, the Court may consider the "written commitment" furnished by ESB in support of its motion to dismiss. *See Automated Salvage Transp. v. Wheelabrator Envtl. Sys.*, 155 F.3d 59, 67 (2d Cir. 1998) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a document upon which it solely relies and which is integral to the complaint, the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment." (citation, quotation marks and alteration omitted)).

The so-called "written commitment" is a document entitled "Loan Proposal" and states, just above the signature line:

---

[1] Since Exhibit G is one of numerous documents appended to the complaint, it may be considered in the context of a Fed. R. Civ. P. 12(b)(6) motion. *See Automated Salvage Transp., Inc. v. Wheelabrator Envtl. Sys., Inc.*, 155 F.3d 59, 67 (2d Cir. 1998).

[2] The complaint is silent on the fate of the $275,000 interest reserve and expenses loan.

3

> By signing below . . . borrower . . . grants permission for ESB to process this request for credit. . . . Please be advised that *this proposal does not constitute a commitment to fund,* and is based upon information supplied by the borrower . . . . As such, the *terms and conditions specified above are subject to change as additional documentation is obtained and reviewed and as additional due diligence is performed* by ESB.

Gallanty Aff., Ex. A ("Loan Proposal") at 2 (emphasis added). The loan proposal also (1) states that "[ESB] <u>WILL NOT</u> BEGIN PROCESSING THIS LOAN REQUEST UNTIL WE HAVE RECEIVED" a signed loan proposal, signed application agreement and application deposit from plaintiff, (2) lists four documents concerning plaintiff's credit-worthiness and status as a legal entity, which were needed before ESB "consider[ed] plaintiff's] *application complete,*" (3) lists an additional seven documents relating to collateral and the sufficiency of plaintiff's funds to close each loan, which were needed before ESB could "make a final underwriting *decision* on your loan,"[3] and (4) notified plaintiff that "[t]his loan will close as more than one loan." *Id.* at 1-2 (first emphasis in original).

While the complaint and documents which the Court may consider are silent on the parties' actions following plaintiff's receipt of the loan proposal, the Court reasonably infers that plaintiff furnished requested documents to ESB, which then processed plaintiff's loan request; these documents presumably lead ESB to approve three

---

[3] In the banking industry, underwriting entails a "[d]etailed credit analysis preceding the granting of a loan, based on [1] credit information furnished by the borrower, such as employment history, salary, and financial statements; [2] publicly available information, such as the borrower's credit history, which is detailed in a [c]redit [r]eport and [3] the lender's evaluation of the borrower's credit needs and [a]bility to [p]ay." Thomas P. Fitch, *Dictionary of Banking Terms,* Barron's Educational Series, Inc. (2006), *available at* http://www.answers.com/topic/underwriting?cat=biz-fin#Banking_Dictionary.

4

of the proposed loans but deny the Bergen Street construction loan.

## II

In moving for dismissal, ESB argues that the loan proposal did not bind ESB to close any of the loans because the document's language makes clear that it did not intend to be bound by the document; therefore, plaintiff cannot claim ESB breached an obligation to loan money. In opposition, plaintiff argues that the parties intended to be bound by the loan proposal, which is evidenced by (1) ESB's "documents, conduct and statements," Pl.'s Mem. of Law at 4, and (2) ESB closing on three of the loans contemplated by the loan proposal.

"Dismissal [on a 12(b)(6) motion] is proper only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Lee v. Bankers Trust Co.*, 166 F.3d 540, 543 (2d Cir. 1999) (citation and quotation marks omitted).

Whether the loan proposal is binding is determined by assessing: "(1) the language of the agreement; (2) the context of the negotiations; (3) the existence of open terms; (4) partial performance; and (5) the necessity of putting the agreement in final form, as indicated by the customary form of such transactions." *Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69, 72 (2d Cir. 1989) (citation omitted). The first factor, however, "is the most important," *Adjustrite Sys., Inc. v. GAB Bus. Servs., Inc.*, 145 F.3d 543, 549 (2d Cir. 1998), and can be dispositive, *see Arcadian Phosphates*, 884 F.2d at 72 ("look[ing] no further than the first factor" where the language of the document "shows that [defendant] did not intend to be bound"), because "courts must be wary of trapping parties in surprise

contractual obligations that they never intended to undertake" while at the same time "enforc[ing] and preserv[ing] agreements that were intended to be binding." *Adjustrite Sys.*, 145 F.3d at 548 (citation, quotation marks and alteration omitted).

Here, the language of the loan proposal is dispositive because it clearly states that the document "does not constitute a commitment to fund," Loan Proposal at 2; indeed, as described previously, the document was an *application* for the loans and stated that terms and conditions may change as ESB performed "additional due diligence." *Id.* At most, the loan proposal was a preliminary agreement which bound plaintiff to submit certain information and ESB to in good faith determine whether or not to grant plaintiff any of the loans; that ESB decided to grant three loans did not bind it to grant the fourth. *Cf. Arcadian Phosphates*, 884 F.2d at 72 ("[P]arties can bind themselves to a concededly incomplete agreement . . . in the sense that they accept a mutual commitment to negotiate together in good faith in an effort to reach final agreement within the scope that has been settled in the preliminary agreement." (citation and quotation marks omitted)).

This conclusion is supported by *Cohen v. Lehman Brothers Bank, FSB*, 273 F. Supp. 2d 524, 529 (S.D.N.Y. 2003), which presented a similar scenario: there, a prospective borrower claimed that a document entitled "Application/Commitment Letter" constituted a contract which the bank breached when it failed to close the loan. *Id.* at 525. The document at issue stated that the "closing of the [l]oan shall be conditioned upon . . . the completion . . . [of] due diligence investigations" and that the document "IS NOT A COMMITMENT BY LENDER TO LEND." *Id.* at 526-27. Using the same legal framework described above, the court also found the first factor dispositive because the document

"states clearly and unequivocally that it is not a commitment to lend." *Id.*, at 529

Here, even if the loan proposal's language were not dispositive, plaintiff's arguments are unavailing. In respect to its argument that ESB's "documents, conduct and statements" demonstrate ESB's intent to be bound by the loan proposal, Pl.'s Mem. of Law at 4, as explained above the document itself conveys no such intent. Further, that ESB stated to plaintiff that it preferred to close the Bergen Street acquisition loan first does not demonstrate that it intended the loan proposal to be binding; indeed, the document stated that the loans would close as "more than one loan" and that terms and conditions were subject to change. Loan Proposal at 2.

Plaintiff's partial performance argument is a red herring because closing on three of the loans did not constitute performance under the loan proposal; at most, the document obligated ESB to "process th[e] request for credit." Loan Proposal at 2. Thus, while closing the loans may have amounted to performance of a separate agreement, it did not constitute partial performance of the loan proposal.

### III

Plaintiff's complaint is dismissed with prejudice because plaintiff has not sought leave to amend nor made any showing as to how it might amend the complaint to state a claim upon which relief can be granted. *See Anatian v. Coutts Bank (Switzerland) Ltd.*, 193 F.3d 85, 89 (2d Cir. 1999) ("[W]e will not deem it an abuse of the district court's

discretion to order a case closed when leave to amend has not been sought." (citation and quotation marks omitted)).

**SO ORDERED.**

/signed/
_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
March 14, 2008